## DONALD STEVENS *v.* PAMELA LEONE

SUPERIOR COURT    JUDICIAL DISTRICT OF    FILE NO. 21589
TOLLAND

Memorandum filed May 18, 1979

*Kenyon, Bonee & Greenspan,* for the plaintiff.

*Dzialo, Pickett & Allen,* for the defendant.

JOHN F. SHEA, JR., J. The plaintiff, as the father of an illegitimate child, has brought this action seeking custody of the child and other orders relative thereto. The plaintiff claims to have resided with the defendant, without benefit of marriage, from 1975 until October of 1978. Their relationship was consummated in March of 1975 and the child in question was born in December of 1975. The action is not in the form of a petition for a writ of habeas corpus, which is the customary form of action in a case of this type, but rather the plaintiff claims that the court has jurisdiction to entertain this action under the authority of § 46b-61 of the General Statutes.

The defendant has filed a motion to dismiss on several grounds, some of which have been corrected by amendments. There still, however, remains an attack on the jurisdiction of the court on the ground that § 46b-61 does not grant jurisdiction to the court to determine custody except in cases arising out of a dissolution of marriage. The defendant claims that the father of an illegitimate child can invoke the jurisdiction of this court in regard to custody only in a petition for a writ of habeas corpus. Out-

side of that relief, the defendant claims that the plaintiff's only other recourse is a proceeding before the Probate Court to remove the natural guardian under § 45-43 of the General Statutes. The defendant also claims that the mesne process is insufficient since it directed the defendant to appear on or before the return day, whereas the applicable statutes and rules of the court do not require an appearance until the second day after the return day. Although both the plaintiff and the defendant have discussed numerous issues in their briefs, the court finds that only the two aforesaid questions are relevant to the court's decision.

In 1973, the legislature passed "An Act Concerning the Dissolution of Marriage," which greatly changed the law and procedure regarding marital and custodial actions in this state. Public Acts 1973, No. 73-373. When adopted in 1973, § 19 of that act provided as follows: "In any case in which any husband and wife having minor children live separately, the Superior Court for the County or Judicial District where the parties or one of them resides may, on the complaint of either party and after notice given to the other, make any order as to the custody, care, education, visitation and support of any minor child of the parties, subject to the provisions of sections 15 to 18, inclusive, of this act."

Sections 15 through 18 of Public Acts 1973, No. 73-373 encompass various provisions relating to custody and support, such as the appointment of counsel, agreements and a consideration of the best interests of the child in making orders. In 1974, the aforesaid § 19, which is presently section 46b-61 of the General Statutes, was amended in that the phrase, "[i]n any case in which any husband and wife having minor children . . ." was changed to "[i]n all cases in which the parents of a minor child . . . ." Public Acts 1974, No. 74-169, § 12. In attempt-

ing to interpret the meaning of the statute in question, a court has the duty to attempt to ascertain the purpose and intent of the legislature in making the amendment referred to and, if possible, to make it effective. *Kelly* v. *Dewey,* 111 Conn. 281, 285. In attempting to determine legislative intent, the court not only must examine the wording of the statute but also should look into its legislative history and its policy. *Sullivan* v. *Town Council,* 143 Conn. 280, 284; *Cedar Island Improvement Assn.* v. *Clinton Electric Light & Power Co.,* 142 Conn. 359, 364; *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 658.

In attempting to determine legislative intent, the court finds it proper to examine the record of the proceedings before the General Assembly at the time that the amendment in question was introduced. In the 1974 session, the chairman of the judiciary committee introduced before the house the bill which contained several amendments to the original act concerning the dissolution of marriages. In referring to the section which has ultimately become section 46b-61 of the General Statutes the chairman stated the following: "In section 12 which addresses itself to section 19 of the Dissolution of Marriage Act further expands the jurisdiction of the Superior Court involving minor children and further states that the section can be used in controversies not only involving a husband and wife but to controversies involving parents of minor children or children if they are no longer married or were never married. This permits the Superior Court to provide for the custody and care and support of minor children." 17 H.R. Proc., Pt. 6, 1974 Sess., p. 2805.

It seems obvious then from the remarks of the chairman of the house judiciary committee at the time that the amendment in question was introduced that it was the intent of the legislature to expand

the jurisdiction of the Superior Court regarding custody issues from controversies arising out of a dissolution of marriage to controversies in which a child had been born without benefit of marriage. The court concludes that in view of the legislative history resulting in the present § 46b-61 of the General Statutes, the father of an illegitimate child need no longer be limited to bringing a petition for a writ of habeas corpus to invoke the jurisdiction of the Superior Court in a question regarding custody. It is clear that it was the intent of the legislature to permit an illegitimate father to institute a cause of action regarding custody under the authority of § 46b-61, as was done in the present case.

The mesne process incorrectly directed the defendant to file an appearance on or before the return day instead of on the second day following the return day as provided by § 52-90 of the General Statutes and by § 66 of the 1978 Practice Book. This resulted from an error in the drafting of the forms provided by the judicial department. The purpose of the rule setting forth the time for a defendant to file an appearance is to give the defendant due notice and to provide sufficient time to avoid the entry of a default. The defendant entered an appearance in this case prior to the return date and suffered no harm or prejudice as a result of the aforesaid defect. If a default had entered as a result of erroneous notice, a different question would confront the court. Under the facts and circumstances of this case, however, the ends of justice would not be advanced by dismissing this action for this technical error.

For the above stated reasons, the motion to dismiss is denied.