## ELIZABETH B. MULLER *v.* THOMAS K. MULLER
### (14841)

Dupont, C. J., and Heiman and Shea, Js.

Argued April 30—officially released October 1, 1996

*Richard T. Meehan, Jr.*, with whom, on the brief, were *Vicki R. Kahaner* and *Daniel D. Portanova*, for the appellant (defendant).

*Richard G. Kent* with whom, on the brief, was *Jocelyn B. Hurwitz*, for the appellee (plaintiff).

SHEA, J. The defendant in this dissolution action appeals from the trial court's judgment (1) granting the plaintiff's motion to dismiss the defendant's motion to modify his visitation rights for lack of subject matter jurisdiction as to the issue of visitation and (2) denying the defendant's motion to open the earlier judgment of dissolution in regard to the amount of child support,

in which he claimed that the plaintiff in that proceeding had fraudulently concealed some of her income. On appeal, the defendant challenges those determinations. We affirm the judgment.

The following facts are relevant to this appeal. The parties were married in Connecticut on May 14, 1989, and separated on September 5, 1989, when the plaintiff moved to California. On November 7, 1989, the plaintiff gave birth to the parties' child in California. Their marriage was dissolved on November 13, 1990, by the Connecticut Superior Court. That marital dissolution judgment provided, inter alia, that the plaintiff was to receive sole custody of the parties' minor child, the defendant was to have extremely restricted visitation rights due to his abusive behavior toward the plaintiff, and the defendant was to pay $200 per week in child support to the plaintiff. The original trial court retained jurisdiction over its visitation order for three years. On June 10, 1993, the trial court reduced the amount of child support the defendant was required to pay to $100 per week plus $50 per week to pay off an accumulated arrearage.

On February 14, 1994, the defendant filed a motion to modify visitation and to change the visitation situs. In March, 1995, the defendant filed a motion to open the dissolution judgment and for a new trial on the ground that the plaintiff had failed to report a substantial amount of income in her financial affidavit filed at the time of the dissolution.[1] In March of that year, the plaintiff moved to dismiss the defendant's motion to modify his visitation rights for lack of subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA) because such jurisdiction had become

[1] On that date, he also filed a motion to modify child support seeking to terminate the child support order, a motion for approval of a psychologist in regard to visitation, a motion for contempt, and a request for production of the plaintiff's 1990, 1991, and 1992 tax returns.

vested in the courts of California.[2] The trial court denied the defendant's motion and granted the plaintiff's motion. The defendant appealed from the judgment.

## I

The defendant first asserts that the trial court improperly granted the plaintiff's motion to dismiss for lack of subject matter jurisdiction. Specifically, the defendant claims that (1) the UCCJA does not apply to the determination of visitation rights, (2) the original trial court retained jurisdiction, (3) when a party seeks to modify a decree, the UCCJA expresses a preference for maintaining jurisdiction in the state that rendered the initial decree, (4) the plaintiff should be estopped from asserting that the court lacks jurisdiction, and (5) the trial court misapplied the inconvenient forum provisions of the UCCJA. We will address these in turn.

## A

The defendant's claim that the UCCJA does not apply to the determination of visitation rights is unavailing. As the trial court noted, pursuant to General Statutes § 46b-92 (2) a dispute regarding visitation rights presents an issue for a "custody determination."[3] In addition, our Supreme Court in *Kioukis* v. *Kioukis*, 185 Conn. 249, 440 A.2d 894 (1981), applied the UCCJA when the plaintiff in that case had moved to modify the trial court's order concerning visitation. We conclude, therefore, that the UCCJA applies to the defendant's motion in this case.

## B

The defendant next claims that the original trial court retained jurisdiction over visitation rights because,

---

[2] The UCCJA is codified in this state as General Statutes § 46b-90 et seq.

[3] General Statutes § 46b-92 (2) provides in pertinent part: " 'Custody determination' means a court decision and court orders and instructions providing for the custody of a child, *including visitation rights*; it does not include

within three years of the dissolution, the parties had entered into a stipulation that visitation rights would be suspended until a psychologist or psychiatrist reported that the defendant's mental condition had improved. The stipulation indicated that the court was, however, to review the psychotherapist's results. The defendant maintains, therefore, that the court necessarily retained jurisdiction over the visitation issue for the stipulation to have any effect. We disagree.

"Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. . . . It is a familiar principle that a court which exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation." (Internal quotation marks omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996). General Statutes § 46b-56 (a) provides that "[i]n any controversy before the superior court as to the custody or care of minor children . . . the court may at any time make or modify any proper order regarding . . . care, custody and visitation *if it has jurisdiction* under the provisions of [the UCCJA]. . . ." (Emphasis added.)

The defendant argues that, in agreeing to a stipulation regarding visitation, the parties implicitly consented to the exercise of subject matter jurisdiction by the trial court. "Subject matter jurisdiction . . . cannot be created through consent or waiver." *Figueroa* v. *C & S Ball Bearing*, supra, 237 Conn. 4. Only the enabling legislation, in this case the UCCJA, can confer subject

a decision relating to child support or any other monetary obligation of any person . . . ." (Emphasis added.)

matter jurisdiction. The parties' stipulation within the three year time limit established by the original trial court, therefore, has no bearing on the determination of subject matter jurisdiction. We do note, however, that the trial court retained jurisdiction for a three year period with the knowledge that the plaintiff and the child were living in California. The three year retention of jurisdiction, therefore, was a limit upon the court's exercise of jurisdiction, and cannot justify an extension of that time span.[4]

## C

The defendant next asserts that, under the UCCJA, " 'adjustments in visitation and other ancillary provisions of the decree, and custody changes, if any, are as a rule made by the original custody court.' " *Kioukis* v. *Kioukis*, supra, 185 Conn. 253, quoting B. Bodenheimer, "The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws," 22 Vand. L. Rev. 1207, 1218 (1969).[5] The defendant ignores, however, the purpose of this general rule: "The preference for continuing jurisdiction of the original state seeks to prevent parental resort to kidnapping to gain a more favorable judgment in a new forum." *Kioukis* v. *Kioukis*, supra, 256, citing B. Bodenheimer, "Interstate Custody: Initial Jurisdiction and Continuing

[4] Because the time during which the trial court retained jurisdiction had expired when the defendant filed his motion to modify visitation, we need not consider whether such retention would have an impact on any of the criteria for the exercise of jurisdiction to make a custody determination as set forth in General Statutes § 46b-93.

[5] We note that the preference for continuing jurisdiction of the court rendering the original custody order does not apply unless that court still has subject matter jurisdiction. General Statutes § 46b-104 (a) provides in pertinent part: "If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (1) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this chapter or has declined to assume jurisdiction to modify the decree . . . ."

Jurisdiction under the UCCJA," 14 Family L.Q. 203 (1980). Here, of course, there is no such danger because the plaintiff has lived in California with the minor child since giving birth to him nearly seven years ago. The child has never lived in Connecticut. Thus, "[t]he fact that the court had previously considered the case [is just] *one* factor favoring its continued jurisdiction. If, however . . . the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere." *Kioukis* v. *Kioukis*, supra, 255. We conclude, therefore, that the defendant's argument for continuing jurisdiction of the Connecticut Superior Court after expiration of the three year limit established by the trial court is without merit.

### D

The defendant's fourth claim closely parallels his second and the result is the same. He asserts that the plaintiff should be estopped from claiming that the trial court lacks jurisdiction because she has "been litigating this case in the Superior Court for over two years" on the issues of visitation and child support. Initially, we note that the record reveals that the plaintiff has only once made a motion to modify the defendant's visitation rights and that was within the three year period during which the original trial court retained jurisdiction. Since then, her litigation of this case has been in response to the defendant's motions. The defendant's charge of forum shopping, therefore, is not accurate. More important, however, is that the only relevant inquiry for the trial court in this case is whether it had jurisdiction over the defendant's visitation rights under the UCCJA; *Hurtado* v. *Hurtado*, 14 Conn. App. 296, 304, 541 A.2d 873 (1988); not whether or to what degree the plaintiff had availed herself of the court previously.

### E

The defendant, in his last claim regarding the trial court's dismissal for lack of subject matter jurisdiction,

argues that the trial court improperly applied the inconvenient forum provisions of the UCCJA found in General Statutes § 46b-97 (c).[6] He asserts that the plaintiff's motion to dismiss for lack of subject matter jurisdiction under the UCCJA "did not raise the issue that Connecticut was an inconvenient forum pursuant to § 46b-97." Because the trial court discussed the provisions of § 46b-97 although it was not mentioned in the plaintiff's pleading, he analogizes this case to our decision in *Grynkewich* v. *McGinley*, 3 Conn. App. 541, 490 A.2d 534 (1985). There, we held that a trial court that had determined, suo moto, that it did not have subject matter jurisdiction under the UCCJA, should have first conducted an evidentiary hearing so that it could base its decision regarding jurisdiction on " 'facts essential to the decision.' " Id., 546, quoting 1 J. McCahey, M. Kaufman, C. Kraut & J. Zett, Child Custody and Visitation Law and Practice (1996) § 4.01[4].

First, the defendant's assertion that the trial court should have held an evidentiary hearing is disingenuous. The parties had agreed to waive an evidentiary hearing on the plaintiff's motion to dismiss.

Second, the plaintiff was not required to raise § 46b-97 because that statute comes into play only after it is

---

[6] General Statutes § 46b-97 provides in pertinent part: "(a) A court which has jurisdiction under this chapter to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum. . . .

"(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, including but not limited to: (1) Another state is or recently was the child's home state; (2) another state has a closer connection with the child and his family or with the child and one or more of the contestants; (3) substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state; (4) the parties have agreed on another forum which is no less appropriate; and (5) the

determined, pursuant to § 46b-93,[7] that a court of this state is authorized to assume jurisdiction. As the defendant acknowledges, "[t]he UCCJA creates a two tier approach to the issue of jurisdiction. . . . The first is contained in General Statutes § 46b-93, which establishes the general class of custody cases that will be within the trial court's jurisdiction. The second tier is embodied in General Statutes § 46b-97, which is intended to vest only one state with jurisdiction at any given time." (Citation omitted.) *Grynkewich* v. *McGinley*, supra, 3 Conn. App. 543–44. These two questions, whether jurisdiction exists under § 46b-93 and whether it should be declined pursuant to § 46b-97, however,

exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 46b-91. . . ."

[7] General Statutes § 46b-93 provides: "Jurisdiction. (a) The superior court shall have jurisdiction to make a child custody determination by initial or modification decree if: (1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before the commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or (2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or (3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or (4) (A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (2) or (3) of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction.

"(b) Except under subdivisions (3) and (4) of subsection (a) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

"(c) Physical presence of the child is not a prerequisite for jurisdiction to determine his custody."

"are separate and distinct under the UCCJA, which envisages that where *concurrent* jurisdiction exists, only one state should exercise that jurisdiction." (Emphasis added.) *Brown* v. *Brown*, 195 Conn. 98, 107, 486 A.2d 1116 (1985). Thus, a court's first inquiry must always be whether it has jurisdiction under § 46b-93. If it can assume jurisdiction under § 46b-93, a potential concurrent jurisdictional situation arises. If the court determines that it does not have jurisdiction under § 46b-93, it need not and may not determine whether Connecticut is an inconvenient forum under § 46b-97.[8]

The trial court discussed the provisions of § 46b-97 only after it had determined that it did not have jurisdiction under § 46b-93.[9] Thus, while it is clear from our discussion that the trial court need not have evaluated the plaintiff's motion on the basis of § 46b-97, the fact that it did is not fatal to its conclusion that Connecticut does not have jurisdiction under § 46b-93. We conclude, therefore, that the trial court's discussion of § 46b-97 presents a wholly different situation from that in *Grynkewich*. In *Grynkewich*, the trial court determined it did not have subject matter jurisdiction on its own motion, without notice to either party and before any hearings or a trial. *Grynkewich* v. *McGinley*, supra, 3 Conn. App. 546. Here, the plaintiff moved to dismiss pursuant to § 46b-93, the defendant filed a memorandum of law opposed to the plaintiff's motion, and the parties have litigated fully the jurisdictional issue.

The defendant on appeal has not challenged the trial court's determination that it lacked subject matter juris-

[8] Section 46b-97 (a) limits the application of the statute to "[a] court which *has* jurisdiction under this chapter to make an initial or modification decree . . . ." (Emphasis added.)

[9] The trial court found that "the child has had no contacts in Connecticut since birth. The child has lived in California with the plaintiff for the past five and one-half years. All his medical, school, or other records are in California. Any and all information to determine what is in the child's best interest now would be found in California."

diction under § 46b-93 (a) (2), which grants jurisdiction to make a child custody determination if "it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships . . . ."

After considering these statutory criteria, the court found that the child had had no contact with Connecticut since birth, that he had lived in California for the past five and one-half years, and that all his medical, school and other records were in California as well as any other information needed to determine his best interests. The defendant makes no claim that these findings are not supported by the evidence. He also has made no claim that any other subsection of § 46b-93 would provide a basis for the exercise of jurisdiction to make a custody determination by a court of this state.

## II

Finally, the defendant claims that the trial court improperly denied his motion to open the judgment, claiming that the plaintiff fraudulently failed to reveal on her October 17, 1990 financial affidavit $300,000 of "income" that was subsequently listed on her 1990 federal income tax return. We disagree.

"Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. . . . The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party

relied on the statement to his detriment." (Citations omitted; internal quotation marks omitted.) *Billington* v. *Billington*, 220 Conn. 212, 217, 595 A.2d 1377 (1991).

In its memorandum of decision, the trial court found that information concerning the $300,000 of income that the defendant claimed the plaintiff had concealed was disclosed in the plaintiff's October 17, 1989 financial affidavit, prior to the judgment dissolving the marriage. The court further found that the defendant had conducted extensive discovery, deposed the plaintiff and had ample opportunity to cross-examine her at trial. It also found that the capital gains income that the defendant claimed was withheld was disclosed in an attachment to the plaintiff's 1990 affidavit.

In making its factual findings, "[t]he trier is not limited to arbitrating the differing opinions of the witnesses but is to make determinations in the light of all the circumstances, the evidence, and his general knowledge . . . ." *Filipetti* v. *Filipetti*, 2 Conn. App. 456, 458–59, 479 A.2d 1229, cert. denied, 194 Conn. 804, 482 A.2d 709 (1984). "[F]actual findings of a trial court . . . are reversible only if they are clearly erroneous. . . . This court cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . ." (Citations omitted; internal quotation marks omitted.) *Cellu Tissue Corp.* v. *Blake Equipment Co.*, 41 Conn. App. 413, 420, 676 A.2d 405 (1996). " 'We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported.' "

*Lukas* v. *New Haven*, 184 Conn. 205, 208, 439 A.2d 949 (1981).

A review of the 1990 financial affidavit reveals that the plaintiff listed assets of $3,680,726, which included real property holdings, three trusts, and an investment management account. The "income" referred to by the defendant on the plaintiff's 1990 tax return included substantial capital gains from the sale of some of those assets. Any capital gains from the sale of all or part of those disclosed assets need not be listed as income on the financial affidavit when it involves an exchange of assets. See *Simms* v. *Simms*, 25 Conn. App. 231, 593 A.2d 161, cert. denied, 220 Conn. 911, 597 A.2d 335 (1991). Moreover, as the trial court found, the defendant had the opportunity at the time of trial to cross-examine the plaintiff on her financial affidavit including the amount of income listed thereon. Having reviewed the plaintiff's 1990 financial affidavit, we concluded that it adequately supports the trial court's finding that she gave a full and complete accounting of her financial situation and its conclusion that none of the elements of fraud had been proven by the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.